IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

(HOUSTON DIVISION)

United States Courts
Southern District of Texas
FILED

APR 1 2 2021

Nathan Ochsner, Clerk of Court

Jason Del Mulder,
    Defendant

—vs—

UNITED STATES OF AMERICA,
    Plaintiff

Motion Challenging Constitutionality,
Jurisdiction of the Court, and for
Dismissal

Case#: 4:20-CR-00673

COMES NOW, Jason Del Mulder, the named Defendant in the above
criminal case, whom is acting in the Pro Se, who makes this Motion
Challenging Constitutionality, Jurisdiction of the Court, and for Dismissal.
Defendant requests that this court take Judicial Notice under the
Federal Rules of Evidence, Rule 201, of the adjudicative facts
contained within the various court case citations cited herein. This motion
shall establish a prima facie case substantiating the unconstitutionality of
18 USC § 2252 A(a)(2)(B), 18 USC § 2252A(b)(1), 18 USC § 3231,
28 USC § 2072, and the Federal Rules of Criminal Procedure; hereinafter
referenced as Challenged Statutes and Rules.

## Argument One — Power to Prohibit

The Challenged Statutes and Rules the Defendant was charged under,
specifically but not limited to, 18 USC § 2252A(a)(2)(B) and 18 USU §
2252 A(b)(1) are facially unconstitutional because those Statutes were
enacted in _excess_ of the enumerated "legislative powers" of the Congress
of the United States [Federal Government] used to enact them.

The Commerce Clause (Art. 1, §8, Cl. 3) and the Necessary and Proper Clause (Art. 1, §8, Cl. 18) do NOT grant by delegation or implication to Congress the power to prohibit commerce or any article of commerce.

Count One of the Indictment (Docket # 9) @ Page 2, charges the Defendant with knowingly receiving material that contains child pornography using any means and "facility of interstate and foreign commerce." The Commerce Clause by the text of the Indictment was the enumerated power of Congress used to enact the Statutes the Defendant is charged with violating.

However, what is the purpose of the Commerce Clause? "The purpose of the Federal Constitution in vesting unto Congress the power to regulate interstate commerce was to protect commercial intercourse from invidious restraints, to prevent interference through conflicting or hostile state laws, and to ensure uniformity in regulation." Pennsylvania v. West Virginia, 262 US 553, 596, 67 L.Ed. 1117, 1132 (1923). The purpose of the Commerce Clause was to establish perfect equality among the several states as to commercial rights and to prevent complications, which local jealousies or interests might bring about. See Veazie v. Moor, 14 HOW 568, 574, 14 L.Ed. 545, 548 (1853). "The very purpose of the Commerce Clause was to create an area of free trade among the several States." Michigan-Wisconsin P.L. Co. v. Colvert, 347 US 157, 170, 98 L.Ed. 583, 794 (1954). These Supreme Court cases and numerous others not cited herein make it plainly evident that the purpose of the Commerce Clause was and still is the promotion of commerce NOT the prohibition of it. The above cited cases create a substantive, historical and factual basis for this statement.

The Commerce Clause Power. "What is this power? It is the power to regulate; that is, to prescribe the rule[s] by which commerce is to be governed." Gibbons v. Ogden, 9 WHEAT 1, 196, 6 L.Ed. 23, 70 (1824).

2 of 42

The term regulate or regulation is defined as the act or process of controlling by rule or restriction. See Black's Law, 9th Ed. @ 1398. Rule is defined as an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation. See Black's Law, 9th Ed. @ 1446. Restriction is defined as a limitation or qualification. See Black's Law, 9th Ed. @ 1429.

Do either of the terms rule or restriction as defined in Black's Law in constituting the definition of regulate or regulation, also from Black's Law, point to a Congressional power to prohibit? No — They do Not, because prohibit or prohibition is defined as a law or order that forbids a certain action. See Black's Law, 9th Ed. @ 1331. Clearly the power to regulate does not include or imply a power to prohibit, because pursuant to the definition of rule and regulate which make up the term regulate do Not forbid the way the term prohibition does.

For proof of the presumption that the power to regulate does not include or imply a power to prohibit, one need only look to the 18th Amendment to the Federal Constitution. The 18th Amendment, ratified in 1919, in section one of the Amendment, prohibited throughout the nation, the several States included, the manufacture, sale, transportation, importation, and exportation of intoxicating liquors. The 18th Amendment, in section two of the Amendment, also granted the Congress of the United States [Federal Government] the power to enforce the amendment by appropriate legislation. Whereby, the 18th Amendment granted a power to prohibit to Congress with regard to intoxicating liquors.

Intoxicating liquor by any common sense definition would have to be classified as an article of commerce. Additionally, the terms; manufacture, sale, transportation, importation, and exportation, as used in the 18th Amendment, are plainly indicative of commercial intercourse, or the exchange or trade of

3 of 43

goods; i.e., commercial activity. Importation and Exportation clearly imply trade, likely to be foreign in nature, and individual articles of commerce must be manufactured, sold, and transported to be traded or exchanged.

The prohibition against and of intoxicating liquors was applied nationally by the 18th Amendment, and the trade, manufacture, sale, transportation, importation, and exportation of intoxicating liquors as used in the amendment would be and plainly is "commerce ... among the several States" if conducted between persons in one or more of the several States, so why wasn't the Commerce Clause Power used to prohibit intoxicating liquor? Because the Commerce Clause Power neither includes nor implies a power to prohibit. It never has and never will. The very existence of the 18th Amendment presumes this to be true, otherwise what was the point of drafting it and ratifing it into the Constitution.

The implication of a power to prohibit can not even come from the Necessary and Proper Clause, because that clause is not a grant of power, but simply a provision for carrying into execution the powers delegated to Congress in Art. 1 §8 of the Constitution. See Kansas v. Colorado, 206 US 46, 88 (1907). Because the existence of the 18th Amendment precludes a power to prohibit from the Commerce Clause Power, the 18th Amendment also makes it impossible to imply a power to prohibit through the Necessary and Proper Clause. There is no power to prohibit to carry into execution.

If the Commerce Clause Power or the Necessary and Proper Clause granted or implied a power to prohibit then the 18th Amendment would be superfluous. Those clauses of the Constitution would have been used to prohibit intoxicating liquor. Amendments to the Constitution are not east to enact or ratify. It has only been done 27 times in the history of the United States of America. The Congress of the time would not have gone through the considerable effort to enact and ratify the 18th Amendment if their delegated

legislative powers could have been used to achieve the same goal. Otherwise, there was no need for the 18th Amendment to the Constitution.

The 18th Amendment, by its very text, at section two of the amendment supports the presumption that the Commerce Clause and the Necessary and Proper Clause do Not grant nor imply a power to prohibit. "Congress, ... shall have ... power to enforce this article [Amendment] by appropriate legislation," See §2 of the 18th Amendment. If Congress had a power to prohibit under the Commerce Clause or the implication of a power to prohibit under the Necessary and Proper Clause, or any of their other vested "legislative powers" they would not have needed to grant themselves prohibition power through the 18th Amendment.

If it takes a constitutional amendment to prohibit intoxicating liquor, which is plainly an article of commerce, on a nation wide scale, it must take a constitutional amendment to prohibit any article of commerce. Therefore, it should take a constitutional amendment to prohibit child pornography as an article of commerce.

Remember, "if there is any conflict between provisions of the Constitution and the Amendments, the Amendments must control." See Schick v. United States, 195 US 65, 68, 49 L.Ed. 99, 101 (1904). "The Constitution's express conferal of some powers makes it clear that it does not grant others." National Federation of Indep. Bus. v. Sebelius, 183 L.Ed.2d 450, 465-466 (2012). The express conferal of a power to prohibit in the 18th Amendment makes it clear that the Constitution does not grant nor imply a power to prohibit in the Commerce Clause or the Necessary and Proper Clause, nor elsewhere in the Constitution. "[The Constitution] neither changes with time nor does it in theory bend to the force of circumstances. It may be amended according to its own permission; but while it stands it is 'a law for rulers and for people'...." Downes v. Bidwell, 182 US 244, 370 (1901).

5 of 43

In the early 1900's Congress knew and recognized that its vested "legislative powers" would not and could not allow them to prohibit on a nationwide scale, or any scale, any article of commerce. This is still the case today, because the Constitution does not change with time, nor does it bend to the force of circumstances. Wherefore, Congress sought to prohibit intoxicating liquors (an article of commerce) through the 18th Amendment. This was and still is, the only constitutionally proper method of prohibiting any article of commerce. The very existence of the 18th Amendment presumes this to be true.

Wherefore, per this argument, as supported by the existance of the 18th Amendment, the Defendant claims that the Congress of the United States [Federal Government] lacks the power to prohibit any article of commerce without an amendment to the constitution. As such, the Congress lacks the power to prohibit child pornography without an amendment to the constitution. Therefore, the Statutes 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are facially unconstitutional based upon this arguments presumption that Congress has no prohibition power. Therefore, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are facially unconstitutional as they exceed the delegated powers of Congress under the Commerce Clause and the Necessary and Proper Clause. Neither of those clauses, per this argument, has or grants Congress a power to prohibit.

"[A] law "beyond the power of Congress, "for any reason, is "no law at all," Nigro v. United States, 276 US 332, 341 (1928)." Bond v. United States, 180 L.Ed.2d 269, 284 (2011), and "[i]f what is done by Congress is manifestly in excess of the powers granted to it, then upon the courts will rest the duty of adjudging that it's [Congress'] action is neither legal nor binding upon the people." Champion v. Ames, 188 US 321, 363 (1903). "If no enumerated power authorizes Congress to pass a certain law,

that law may not be enacted ..." See Sebelius, 183 L.Ed.2d 450, 465-466.
This argument plainly shows that the enactment of 18 USC § 2252A(a)(2)(B)
and 18 USC § 2252A(b)(1) were clearly in excess of the legislative powers
granted Congress. Those Statutes were enacted in excess of the Commerce
Clause and Necessary and Proper Clause, because neither clause grants nor
implies a prohibition power to Congress, and this court has a duty to adjudge
such by declaring 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1)
facially unconstitutional for lack of Congressional prohibition power.

### Argument Two — Power to Punish

The Statutes, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1)
are facially unconstitutional because those Statutes were enacted in excess
of the enumerated "legislative powers" used to enact them. The Commerce Clause
(Art. 1, §8, Cl. 3) and the Necessary and Proper Clause (Art. 1, §8, Cl. 18)
of the Federal Constitution do NOT grant by delegation or implication to Congress
the power to punish by felonious criminal statute in furtherance of those vested
powers. Those Statutes, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1),
are also facially unconstitutional a violative of the 10th Amendment's federalism
principles, because Congress, by assuming an undelegated power to punish under
their Commerce Clause Power and the Necessary and Proper Clause, has usurped
the police power reserved to the several States under the 10th Amendment.
    The power to punish by felonious criminal statute is not expressly delegated,
by enumeration, to the Congress of the United States [Federal Government] under
their Commerce Clause Power nor through the Necessary and Proper Clause, and
"[i]f no enumerated power authorizes Congress to pass a certain law, that law
may not be enacted [.]" Sebelius, 183 L.Ed.2d @ 465-466. The power to
punish IS expressly delegated, by enumeration, within only three-clauses

of the Constitution, (Art.1, §8, Cl.6; Art.1, §8, Cl.10; and Art.3, §3, Cl.2), and nowhere else. "Congress is expressly authorized" to provide for the punishment of counterfeiting the securities and the current coin of the United States, and to define and punish piracies and felonies committed on the high seas and offenses against the laws of nations." [Congress] is also empowered to declare the punishment of treason, and provision is made for impeachments. This is the extent of power to punish crime expressly conferred." Knox v. Lee and Parker v. Davis, 79 US 457, 535-536 (1871).

If those three clauses of the Constitution are the extent of power to punish expressly conferred upon Congress then the power to punish crime is expressly WITHHELD from all other enumerated legislative powers of Congress; especially, the Commerce Clause Power and the Necessary and Proper Clause.

"The enumeration of powers is also a limitation of powers, because [an] enumeration [of a power] presupposes [or restricts and removes] something not enumerated. The Constitution's express conferral of some powers make clear that it does not grant others. And the Federal Government "can exercise only the powers granted to it."" Sebelius, 183 L.Ed. 2d @465-466. "It is also a rule of construction, acknowledged by all, that the exceptions from a power mark its extent." Gibbons v. Ogden, 9 WHEAT 1, 189-191 (1824). Wherefore, because the power to punish is expressly enumerated within Art.1, §8, Cls. 6 and 10; and Art.3, §3, Cl.2, those expressions of punishment power mark that powers extent, they remove punishment power from the other enumerated legislative powers of Congress. They expressly remove punishment power from the Commerce Clause Power and the Necessary and Proper Clause.

"If no enumerated power authorizes Congress to pass a certain law, that law may not be enacted [.]" Sebelius, 183 L.Ed. 2d @ 466. "The Constitution contains no grant, general or specific, to Congress of the

power to provide for the punishment of crimes [felonious criminal statutes], except within [Art.1, §8, Cl.6; Art.1, §8, Cl.10; and Art.3, §3, Cl.2 of the Constitution]." Logan v. United States, 144 US 263, 283 (1892). The Commerce Clause Power (Art.1, §8, Cl.3) contains no express grant of punishment power in support of its delegated power to regulate interstate and foreign commerce, nor can the power to punish be gained by the Commerce Clause through necessary implication, because the Necessary and Proper Clause (Art.1, §8, Cl.18) contains no express grant of punishment power either. The Necessary and Proper Clause, "is not the delegation of a new and independant power, but simply a provision for making effective the [other powers enumerated within Art.1, §8 of the Constitution]." See Kansas v. Colorado, 206 US 46, 88 (1907).

Congress is authorized under the Necessary and Proper Clause, "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing powers..." delegated by enumeration within Art.1, §8 of the Constitution. However, unlike the Counterfeiting Clause (Art.1, §8, Cl.6) and the High Seas Clause (Art.1, §8, Cl.10), the power to punish is NOT a foregoing power under the Commerce Clause. It is an undelegated power which is "reserved to the States respectively..." under the 10th Amendment to the Constitution.

"It follows from the enumeration of specific powers that there are real boundaries to what the Federal Government may do. The enumeration [of a specific power] presupposes something not enumerated." Carrol v. United States, 178 L.Ed.2d 799, 800 (2011). As an example, let us look at two clauses of the Constitution in Art.1, §8. The clause at Art.1, §8, Cl.5 authorizes Congress "to coin Money, regulate the Value thereof, and of foreign Coin, and..." The very next clause (Art.1, §8, Cl.6) authorizes Congress "to provide for the punishment of counterfeiting

the Securities and current coin of the United States." It plainly appears that the power to punish counterfeiting was expressly delegated in a seperate clause of the Constitution in aid of Congress' power to regulate the value of money (the coin). Clearly, the Congress did not and does not inherently have the power to punish included within nor through necessary implication to their power to regulate. If they did the Constitution would not have placed each power in seperate clauses of the legislative powers covering the same subject - Money.

The Framers of the Constitution would not have delegated to Congress an enumerated and specific instance of punishment power if Congress already had punishment power whenever they deemed it "necessary and proper", nor would the Framers have expressly and specificly enumerated a power to punish if such punishment power could be implied pursuant to a power to regulate.

"It is a rule of construction, acknowledged by all, that the exceptions from a power mark its extent." Gibbons v. Ogden, 9 WHEAT 1, 189-191 (1824). The power to punish can not be implied from the power to regulate interstate and foreign commerce under the Commerce Clause, because the power to punish is expressly delegated by enumeration in three other specific clauses of the constitution, and the Commerce Clause was not and is not one of those specific clauses. The Framers of the Constitution would not have delegated by enumeration a power to punish for counterfeiting Securities and money in one clause of the constitution, and then delegated by enumeration a power to regulate those same securities and money, if the power to punish and the power to regulate were synonymous. The Framers carefully chose the language they used in the Constitution. If the power to regulate and the power to punish were synonymous, such an interpretation of the Constitution would and currently does render the Counterfeiting Clause superfluous.

Any so called necessary implication of a power to punish included

within a power to regulate should not render that which is expressly delegated by enumeration superfluous. Remember, "[T]he enumeration [of punishment power in one clause] presupposes something not enumerated, [and] [t]he Constitution's express conferral of some powers [punishment power in support of regulating money] make clear that it does not grant [the Commerce Clause] that expressly conferred power." See Sebelius 183 L.Ed. 2d 450, 465-466.

"In expounding [or interpreting] the Constitution of the United States, every word must have its due force, and appropriate meaning; for it is evident from the whole instrument, that no word [like "punish"] was unnecessarily used, or needlessly added. The many discussions which have taken place upon the construction of the Constitution have proved the correctness of this proposition; ... Every word appears to have been weighed with the utmost deliberation, and its force and effect to have been fully understood." Wright v. United States, 302 US 583, 588 (1938). "Every power [of the Congress, such as, the power to punish] is a matter of definate and positive grant; ..." The United States v. Worrall, 2 US (Dall) 384, 391 (1798).

Therefore, because the power to punish is a definate and positive grant of power delegated by enumeration in certain specific clauses of the Constitution, the power to punish can not be used by other clauses of the Constitution wherein the power to punish is not expressly included therein. The power to punish can not be utilized as "necessary and proper" to carry into execution other delegated powers where the power to punish is not already expressly given by definate and positive grant.

One should look to the Kentucky Resolutions of 1798, authored by Thomas Jefferson, Founding Father and creator and signer of the Declaration of Independence, an individual who understood exactly what the

Constitution truly ment, having been there when it was adopted, and should still mean today.

The 2nd Resolved Clause of <u>The Kentucky Resolutions of 1798</u> states:

"[T]he Constitution of the United States, having delegated to Congress the <u>power to punish</u> treason, counterfeiting the securities and current coin of the United States, piracies, and felonies committed on the high seas, and offenses against the law of nations, and <u>no other crimes whatsoever</u>; and it being true as a general principle, and one of the amendments to the constitution, [the 10th Amendment], having so declared, that "the powers not delegated to the United States [Federal Government] by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," therefore ... all their [the Congress] other acts which assume to create, define, or punish crimes, other than those so enumerated in the Constitution, are altogether <u>void</u> and of <u>no force</u>; and that the power to create, define, and punish such <u>other crimes</u> is reserved, and, of right, appertains solely and exclusively to the respective States, each within its own territory."

The 1st Resolved Clause of <u>The Kentucky Resolutions of 1798</u> states:

"[W]hensoever the general government [United States Federal Government] assumes undelegated powers, its [the Federal Government's] acts are <u>unauthoritative</u>, <u>void</u>, and of no force."

Notice that the Founding Father, one of the Framers of the Constitution, specifically mentioned "... the power to punish," and that the Constitution delegates to Congress "... no other crimes whatsoever." Jefferson then states that all of Congress' "... other acts which assume to create, define, or punish crimes, ... are altogether void, and of no force." Here we have one of the Founding Fathers, the creator of the Declaration of Independence, one who assisted in the authoring of the Constitution itself clearly stating that the United States [Federal Government] has no punishment power other than that expressly delegated by enumeration in the Constitution, with any and all other punishment power being expressly reserved to the several States or to the people, pursuant to the 10th Amendment. This conclusively proves that the Commerce Clause Power and the Necessary and Proper Clause do not grant Congress any punishment power under those clauses of the Constitution, and that any attempt or current use of those clauses to create, define, or punish crimes is and are altogether void, and of no force.

Plainly, 18 USC § 2252A (a)(2)(B) and 18 USC § 2252A (b)(i) are facially unconstitutional for being enacted through a non-existent power to punish under the Commerce Clause Power and the Necessary and Proper Clause. Wherefore, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A (b)(i) were enacted in excess of Congress' vested "legislative powers," specifically, their Commerce Clause Power and the Necessary and Proper Clause. Additionally, it is made plain that 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A (b)(i) are facially unconstitutional as violative of the 10th Amendment to the Constitution, because 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A (b)(i) usurp the police powers expressly reserved to the several States, or to the people. That power being punishment power except where expressly delegated by enumeration in the Constitution. It is important to remember that "if there is a conflict between provisions of the Constitution and the Amendments, the Amendments must control," See Schick v. United States, 195 US 65, 68, 49 L. Ed. 99, 101 (1904).

## Argument Three — Territorial Jurisdiction

The power to punish felonies is inherent in the rights of sovereignty. This was well known when the Constitution was adopted. Each of the then 13 States that ratified the Constitution retained all the powers not delegated by enumeration to the United States [Federal Government]. One of the powers retained was the right to punish the people who committed crimes within their own territorial boundaries. This is called territorial jurisdiction, which is defined as: "the sovereign jurisdiction that a state has over the land within its limits ... and over all the persons and things within those areas subject to its control [jurisdiction]." Webster's 3rd New International Dictionary, unabridged (1981) @ 2,361.

"[N]o sovereignty can extend its jurisdiction beyond its territorial limits." United States v. Wong Kim Ark, 169 US 649, 690 (1898). "The source of national power in this country in the Constitution of the United States; and the [Federal] government, as to our internal affairs possesses no inherent [soverignty] sovereign power not derived from that instrument, ..." Downes v. Bidwell, 182 US 244, 369 (1901). Territory is defined as: "A geographical area included within a particular government's jurisdiction; the portion of the earth's surface that is in a state's exclusive possession and control." See Black's Law, 9th Ed. @ 1611.

The several States of the Union are plainly sovereign with regard to their geographic territory. It is also plain, based upon the text and proper construction, that the only felonies/crimes the Federal Government can punish within the geographic territory of one of the several States are those expressly delegated by enumeration within Art. 1, §8, Cls. 6 and 10; and Art. 3, §3, Cl. 2 of the Constitution. If Congress already held the power to punish felonies/crimes such as 18 USC § 2252A(a)(2)(B) and

18 USC § 2252A (b)(i)   within the geographic territorial limits of the several States, why then does the Constitution expressly delegate by enumeration the power to punish only specific felonies/crimes in the three clauses of the Constitution listed above? Three expressly limited subjects. This is because those three clauses of the Constitution are and contain the only punishment power Congress has within the geographic territorial limits of one or more of the several States without cession of territory or jurisdiction on the part of the State.

This is made plain by Art. I, § 8, Cl. 17 of the Constitution which requires the several States to cede jurisdiction over property; i.e., land, to the Federal Government so the Federal Government can exercise territorial jurisdiction over those land areas within one of the several States. The rights of sovereignty and territorial jurisdiction impart the right to enact exclusive legislation as under the provisions of Art. I, § 8, Cl. 17. "Exclusive legislation is consistent only with exclusive jurisdiction. . . [F]or if exclusive jurisdiction and exclusive legislation do not impart the same thing, the States could not cede or the United States [Federal Government] accept, for the purposes enumerated in [Art. I, § 8, Cl. 17], any exclusive jurisdiction." Surplus Trading Co. v. Cook, 281 US 647, 654 (1928). Jurisdiction is defined as: "A government's general power to exercise authority over all persons and things within its territory." See Black's Law, 9th Ed. @      . In Fort Leavenworth R.R. Co. v. Lowe, 114 US 525, 538 (1885) the Supreme Court stated: "If the United States [Federal Government . . . had the right of exclusive legislation . . . they, [the Federal Government], would also have exclusive jurisdiction.

Remember, the United States [Federal Government] is a government of limited, delegated, specific, and enumerated powers, not a government of general powers. See Bond v. United States, 189 L.Ed.2d 1, 28 (2014).

The United States [Federal Government] has no power or authority to act except where expressly authorized to do so, by enumeration, in the Constitution. See Kansas v. Colorado, 206 US 46, 87-88 (1907). The source of the United States [Federal Governments'] national power in America is the Constitution; and that Government, as to the internal affairs of the nation possesses no inherent sovereign power not derived from that instrument. See Bidwell, 182 US @ 369. "The United States [Federal Government] never held any municipal sovereignty, jurisdiction, or right of soil in and to the territory [geographical], of which Alabama, or any of the new States were Formed... [T]he United States [Federal Government] have no capacity to exercise municipal jurisdiction, sovereignty, or eminent domain within the [geographical territory] limits of a State or elsewhere, except in cases in which it is expressly granted [by the Constitution]." Pollard v. Hagan, 3 How (US) 212, 221-224 (1845).

The essence of this is that if the Defendant, or anyone else for that matter, physically reside upon the land territory within one of the several States, then the United States [Federal Government] can not provide for the punishment by felonious criminal statute within the geographic boundaries that are the land territory of one of those several states except where the power to punish has been expressly delegated by enumeration in the Constitution. This is because the United States [Federal Government] has no territorial jurisdiction within the geographic territory of any one of the several States without cession of the State's territory to the Federal Government.

Remember, the original 13-Union States that drafted and ratified the Constitution, and all the Union States that came after, were and still are sovereign over all the land and waters, geographic territory, each

within their own territorial limits. At the time of the Founding of America the United States [Federal Government] had no land territory of its own. The United States [Federal Government] had no sovereignty [territorial jurisdiction] to punish anyone anywhere except where punishment power was expressly delegated by enumeration by the Constitution. This is why Virginia and Maryland had to cede exclusive jurisdiction [territorial jurisdiction] over land not exceeding 10 miles square, which comprises the District of Columbia, to the United States [Federal Government] in Art.1, §8, Cl.17 of the Constitution. The District of Columbia is defined as: "The seat of the U.S. Government ... Neither a state nor a territory, it is constitutionally subject to the exclusive jurisdiction of Congress." See Black's Law, 11ᵗʰ Ed. @ 599.

With this cession of jurisdiction to legislate exclusively, Congress could write laws to protect themselves, and "exercise like Authority over all places purchased by the Consent of the Legislature of the State[s]," and by Cession from a particular State, and the Acceptance of those places by Congress. See Art.1, §8, Cl.17. "Since 1940 Congress has required the United States [Federal Government] to assent to the transfer of jurisdiction over property [territory], however it may be acquired." Paul v. United States, 371 US 245, 264 (1963). See also 40 USC § 3112. It is in these places and only these places where the United State [Federal Government] can exercise territorial jurisdiction, because those ceded and accepted places are the sum totality of the United State's [Federal Government] geographic land territory.

The Federal Government "can claim no powers which are not granted to it by the Constitution." Kansas v. Colorado, 206 US 46, 87-88 (1907). Wherefore, pursuant to Argument Two, in that the power to punish is not granted under the Commerce Clause Power or under the Necessary and Proper Clause, the Federal Government can not claim it. Because the

power to punish is not delegated to Congress in aid of their power to regulate interstate and foreign commerce, the exercise of any punishment power within the geographic territory [territorial jurisdiction] of one or more of the several States is "exclusive legislation" which "can be acquired by the United States [Federal Government] only in the mode pointed out in the Constitution, ...; i.e., Art.1, §8, Cl. 17. See also Fort Levenworth R.R. Co. v. Lowe, 114 US 525, 538-539 (1885).

"If there has been no cession by the State of the place [territory] ... the State['s] [Territorial] jurisdiction still remains complete and perfect." Fort Leavenworth R.R.Co. v. Lowe, 114 US @ 538. The part of, geographic land territory, of the State of Texas wherein Defendant physically resided at the time of his purported felonious conduct had not and never has been ceded to the United States [Federal Government], and therefore that geographic land territory, wherein Defendant resided, was and still is State territory under their exclusive territorial jurisdiction. Wherefore, the United States [Federal Government] held no exclusive or concurrent territorial jurisdiction over Defendant's residence. It is important to note that "the criminal jurisdiction of the United States [Federal Government] is in general based on the territorial principle." United States v. Flores, 289 US 137, 155 (1933).

This contention is supported by the Criminal Complaint and the Indictment in Defendant's case. Both instrument state "in or within the Southern District of Texas" as the physical location wherein the purported crime was committed by the defendant. District is defined as "A territorial area into which a county, state, country, municipality, or other political subdivision is devided for judicial, political, electoral, or administrative purposes." Black's Law, 11th Ed. @ 598. Judicial is defined as "(1) Of, relating to, or by the court or a judge." Black's Law, 11th Ed. @ 1011.

Administrative is defined as "Of, relating to, or involving the work of managing a company or organization; executive. Black's Law, 11th Ed. @ 54. Based upon these definitions it clearly appears as though the Southern District of Texas, mentioned within the Complaint and Indictment, are solely administrative managment judicial territory established for a specific court or judge. Neither the definitions nor the text of the Complaint and Indictment show a claim of territorial jurisdiction the United States [Federal Government] can claim from the State of Texas. I doubt the legislature has ceded territorial jurisdiction to the Federal Government over the land territory encompassed by the Southern [Judicial] District of Texas, as listed upon the Complaint and Indictment.

"It is a general rule of criminal law that the crime must be committed within the sovereignty seeking to try the offense in order to give the sovereign jurisdiction." Yenkichi Ito v. United States, 64 F.2d 73, 74 (9th Cir. 1933). As an example, the Russian Federation, can not try me for violation of their locally applicable laws while I physically reside outsid their geographic land territory. I am not subject to their sovereignty. The same principle applies to the United States [Federal Government]. "The criminal jurisdiction of the government of the United States — that is its jurisdiction to try parties for offenses committed against its laws ... [T]he criminal jurisdiction of the United States [Federal Government] is necessarily limited to their own territory ... [The United States Federal Government's] possessions." Yenkichi Ito, 64 F.2d @ 74.

The United States [Federal Government] does not have territorial jurisdiction over the geographic land area of the State of Texas where in Defendant physically resided at the time of his purported violation of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1). The Indictment against the Defendant should be dismissed, with prejudice, for lack of territorial jurisdiction over the physical

place where in the criminal conduct took place. Additionally "the Federal Government has nothing approaching a police power." United States v. Lopez, 514 US 549, 584-585 (1995). That power being properly reserved to the several States under the 10th Amendment. Wherefore, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are facially unconstitutional for usurpation of the police power reserved to the State of Texas under the 10th Amendment.

## Argument Four — Unconstitutional Application of Felony Offense Statutes

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) were unconstitutionally applied to the Defendant; i.e., unconstitutional as-applied to the Defendant. Those Statutes could not be applied to the Defendant because of where the Defendant physically resided when those Statutes were purportedly violated.

At the time Defendant purportedly violated 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1), Defendant was domiciled and physically resided with his Harris county, in the territorial jurisdiction of the State of Texas, the exact physical residence being located at 12485 Gulf Fwy., Room 245, Houston, Texas 77034; hereinafter; "Defendant's Residence."

Defendant's Residence is not a territory or insular possession of the United States [Federal Government], nor is Defendant's Residence within a territory or insular possession of the United States [Federal Government]. As such, Defendant's Residence is not under nor within the exclusive or concurrent legislative territorial jurisdiction of the United States [Federal Government]. This also means that Defendant's Residence is not under nor within the special maritime and territorial jurisdiction of the United States [Federal Government].

The text and component sections of Title 18 of the United States Code, unless a statute therein clearly conveys that it is ment to apply extra-territorially, is and are written to occur and apply within the special meritime and territorial jurisdiction of the United States [Federal Government]. Any such extra-territorial application must also be supported by a constitutionally enumerated foundation, such as, the power to punish within Art. I, §8, Cl. 6 and §2 of the now repealed 18th Amendment as to the power to prohibit. "[The United States Federal Government's] actual territory is co-extensive with their possessions." Yenkichi Ito, 64 F.2d @ 74, and "[i]t is true that the criminal jurisdiction of the United States [Federal Government] is in general based on the territorial principle." United States v. Flores, 289 US 137, 155 (1933). This is why the "United States [Federal Government]" is defined in a territorial sense at 18 USC §5, as places (land) subject to their jurisdiction, those places being defined at 18 USC §7.

Title 18 USC §5 defines, for all of Title 18, the term "United States [Federal Government]" in this way: "The term United States [Federal Government] as used in this title [Title 18] in a territorial sense includes all places [all lands] and waters, continental or insular subject to the jurisdiction of the United States [Federal Government]." The jurisdiction of the United States [Federal Government] embraced by this definition is the exclusive or concurrent legislative territorial jurisdiction imparted by Art. I, §8, Cl. 17 of the Constitution. This is further supported by 18 USC §7.

The territorial places (lands) subject to the jurisdiction of the United States [Federal Government], 18 USC §5, are further defined and clarified at 18 USC §7 — Special Maritime and Territorial Jurisdiction of the United States [Federal Government] defined, and includes at 18 USC §7(3) — "Any lands (places), reserved or acquired for the use of the United States [Federal

Government], and under the exclusive or concurrent [legislative territorial] jurisdiction thereof, or any place (land) purchased or otherwise acquired [ceded] by consent of the legislature of [one of the several] States."

Notice how 18USC §5 and 18USC §7(3) when taken together complete a full statutory definition of _all_ United States [Federal Government] territory subject to their jurisdiction, and that none of this statutorially defined Federal United States territory includes any of the geographic territory properly under the sovereignty of the several States unless one of the several States cedes territory to the United States in accordance with Art.1, §8, Cl.17 and 40 USC § 3112.

Remember, all legislation of the Federal Congress, such as the Statutes the Defendant was charged under are presumptively territorial and confined to the territory (geographic area) over which the lawmaking power has jurisdiction.

"[T]he criminal jurisdiction of the United States [Federal Government] is necessarily limited to their own territory... Their actual territory is coextensive with their possessions." Yenkichi Ito v. United States, 64 F.2d 73, 74 (9th Cir. 1993). "It is true that the criminal jurisdiction of the United States [Federal Government] is in general based upon the territorial principle." United States v. Flores, 289 US 137, 155 (1933), and the territorial places subject to the jurisdiction of the United States [Federal Government] are defined at Title 18 USC §7. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States [Federal Government], as defined in 18 USC §7 and Art.1, §8, Cl.17. When a statute gives no clear indication of extraterritorial application, it has none." Morrison v. National Australia Bank LTD, 177 L.Ed.2d 535, 547 (2010).

Wherefore, "[I]n order for a federal court to exercise jurisdiction over a criminal action, the offense must have occurred within:" "[L]ands reserved or acquired for the use of the United States [Federal Government], and under the

exclusive or concurrent jurisdiction thereof . . . by consent of the legislature of the State. . ."" <u>United States v. Perez</u>, US Dist. Lexis 75086 (N.D.Ca. 2006). "[T]he general jurisdiction over the place . . . adheres to the territory, as a portion of the sovereignty [of one of the several States] not yet given away." <u>United States v. Bevans</u>, 16 US (3 Wheat) 336, 337, 4 L.Ed. 404 (1818). "[I]t is clear . . . that congress can not punish felonies generally." <u>United States v. Morrison</u>, 52 US 598, 618 (2000). "Legislation is presumptively territorial and <u>confined</u> to the limits over which the lawmaking power has jurisdiction. All legislation is prima facia territorial." <u>New York Central RR Co. v. Chisholm</u>, 268 US 29, 31-32 (1925) (citations and internal quotation marks omitted).

The case <u>United States v. Gatlin</u>, 216 F. 3d 207, 217-220 (CA2, 2000) states:

"In the 1909 Act, which comprehensively codified <u>all</u> existing federal criminal law, Congress for the first time created a <u>seperate</u> section devoted solely to <u>defining</u> jurisdiction. Accordingly, the 1909 Act, like the 1790 Act, was <u>limited</u> to lands within the <u>exclusive</u> jurisdiction of the United States [Federal Government]. Senator Heyburn of Pennsylvania, the Senate manager of the bills that became the 1909 Act, put the matter most bluntly, stating that the purported legislation does <u>not</u> enlarge the jurisdiction of the United States courts by a hairs breath . . . Senators will find that we have <u>not</u> attempted to enlarge the jurisdiction of the United States [Federal Government] either technically or geographically. We have simply gathered up a large number of existing provisions in the various statutes . . . in order to avoid the repitition in each seperate section of this geographic jurisdiction . . . The committee . . . [has] <u>not</u> enlarged the jurisdiction territorially or technically of the United States courts. 42 CONG. REC. 1186 (1908) (emphasis added)."

As clearly shown by the Gatlin court opinion above, in 1909 Congress created the precurser to 18 USC §7. They did this to avoid repeating the geographical jurisdiction requirement within each seperate section related to the different individual Federal Crimes. Like the 1909 Act, the current 1948 Act (Title 18 of the United States Code), codifies all existing federal criminal law, and is likewise limited to lands within the exclusive territorial jurisdiction of the United States [Federal Government] unless a contrary extraterritorial intent appears. Unless that contrary intent plainly appears the vast majority of Federal Felonious Criminal Statutes, including but not limited to 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) are supposed to be read to occur within the "special maritime and territorial jurisdiction of the United States [Federal Government]."

Wherefore, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) for lack of specific textual extraterritorial intent are exclusive legislation limited exclusively to the territory and insular possessions of the United States [Federal Government], and thus 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) do not and can not be applied within the sovereign geographic territory of one of the several States.

As previously stated within this motion the Defendant has already created and presumptively shown that the Commerce Clause Power and the Necessary and Proper Clause do not delegate by enumeration a power to punish by felonious criminal statute in furtherance of those clauses. "It is an established principle that the attainment of a prohibited end may not be accomplished under the pretext of the exertion of powers [of Congress] which are granted ... Congress can not, under the pretext of executing delegated power, pass laws for the accomplishment of objectives not entrusted to the Federal Government." United States v. Butler, 297 US 1, 67-68 (1936).

The Power to Punish Argument makes it plainly evident that pursuant to the Constitution's very text that a power to punish was not included as a delegated power for the accomplishment of the objectives of the Commerce Clause Power or the Necessary and Proper Clause. The power to punish is not included within either clause, and only delegated by specific enumeration within the Constitution. Remember, " the enumeration of powers is also a limitation of powers" because the enumeration presupposes something not enumerated." The Constitution's express conferral of some powers makes clear that it does not grant others." Sebelius, 183 L.Ed.2d 450, 465-466 (2012). Because the power to punish is a delegated and positive grant of power within certain specific clauses of the Constitution, the power to punish can not be utilized as necessary and proper to carry into execution other delegated powers of Congress unless specifically listed therein.

The Constitution expressly delegates punishment power in furtherance of Art. 1, §8, Cl. 6 ; Art.1, §8, Cl. 10 ; and Art. 3, §3, Cl. 2 and nowhere else. The power to punish is delegated therein and therein only, and therefore not permissable for the furtherance of other powers. "The Constitution contains no grant, general or specific, to Congress of the power to provide for the punishment of crimes, except within the above articles of the Constitution." Logan v. United States, 144 US 263, 283 (1892). The "no grant, general or specific," axiomatically exclude the Commerce Clause and the Necessary and Proper Clause, because the power to punish was not and is not granted unto Congress in furtherance of those clauses.

The rationale that 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are constitutional exercises of the Federal Congress' Commerce Clause Power and the Necessary and Proper Clause is presumptively demolished in light of this motion's Power to Punish Argument. This leaves Art. 1, §8, Cl. 17 as the only source of

delegated power available to sustain 18 USC §2252A(a)(2)(B) and 18 USC §2252A(b)(1), and as presumptively shown by other portions of this motion, those Charged Statutes can only be enforced within or apply within the special maritime and territorial jurisdiction of the United States [Federal Government].

Fed. R. Crim. P., Rule 1(a)(1) plainly states that : "These rules [the Federal Rules of Criminal Procedure] govern the procedure in all criminal proceedings in the United States district courts." The term govern means "to control a point in issue." See Black's Law, 9th Ed. @ 764. Meaning, the Federal Rules of Criminal Procedure control in all criminal proceedings in United States district courts, including but not limited to this court.

Fed. R. Crim. P., Rule 1(b)(9) plainly states that the term "State" for the purposes of the whole of the Federal Rules of Criminal Procedure, which as established under Rule 1(a)(1) control in all United States district courts, "includes the District of Columbia, and any commonwealth, territory, or possession of the United States [Federal Government]." Notice what is not included within this definition, the several States of the Union.

The term includes, as used within Fed. R. Crim. P., Rule 1(b)(9) is presumptively a word of limitation, limiting the scope and meaning of the rule to the words or phrases contained therein. It is a cardinal rule of construction that words or phrases omitted from rules, statutes, or regulations were intentionally omitted, and that missing or omitted words or phrases should not be read into a rule, statute, or regulation by a court. It is also a Maxim of Law. Courts have a duty not to read them in. To state this more plainly, if the definition or meaning of a particular term included things not mentioned therein it would not be necessary to state the things included, because they would automatically be included in the absence of the definition or meaning. Defendant once more draws notice to the fact that the several States

were not and are not included within the definition of State in Fed. R. Crim. P., Rule 1(b)(9).

The Canon of Construction _ejusdem generis_, which instructs that where "general words follow specific words in a statutory [or rules] enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Circuit City Stores, Inc. v. Adams, 532 US 105, 114-115 (2001). To ascertain the meaning of words like Commonwealth, territory, and insular possession, as used in Fed. R. Crim. P., Rule 1(b)(9) "State", one can apply the Rule of Ejusdem Generis or Noscitur Sociis which informs us that they take on the same meaning as District of Columbia and Puerto Rico. That is, places (land) under the concurrent or exclusive legislative (territorial) jurisdiction of the United States [Federal Government], and plainly do not embrace nor include the several States. See Supreme Court Annotations, 46 L.Ed.2d 879, Ejusdem Generis - Noscitur A Sociis, §2, Summary and 46 L.Ed.2d 879, Ejusdem Generis - Noscitur A Sociis, §4, General principles governing application of noscitur a sociis rule.

This rests on the well-known cannon of statutory construction, expressio unius est exclusio alterius, "the expression of one is the exclusion of others." United States v. Wells Fargo Bank, 485 US 351, 357 (1988). The following is also informative on what is and is not included within the definition of "State" at Fed. R. Crim. P., Rule 1(b)(9). Expressio unius est exclusio alterius - defined as "The mention of one is the exclusion of another;" i.e., when certain persons or things are specified in a document, an intention to exclude all others from its operation may be inferred. Expressum facit cessare tacitum - defined as "What is expressed makes what is silent cease;" i.e., when we find an express declaration we should not resort to implication." [W]here Congress [or any other rule making body] has

carefully employed a term in one place and excluded it in another, it should not be implied where excluded." United States v. Wong Kim Ark, 169 US 649, 722 (1898). Incidently, the above also support Defendant's power to punish argument.

Defendant now emphasizes a powerful portion of the United States Code at 28 USC § 2072 (b) which states that the Federal Rules of Procedure, including but not limited to the Federal Rules of Criminal Procedure, "[S]hall not abridge, enlarge, or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." This means that the Federal Rules of Criminal Procedure supersede _any and all_ portions of Title 18 of the United States Code when those portions of Title 18 are used within _any_ United States district court, (See Fed. R. Crim. P., Rule 1(a)(1), if those portions of Title 18 conflict with the Federal Rules of Criminal Procedure. Another important statement is made in Steele v. Bulova Watch Co., 344 US 280, 290 (1952), that: "Words having universal scope, such as . . . . 'Every person [or any person] . . . will be taken as a matter of course to mean only everyone _subject to_ such legislation, not all that the legislator subsequently may be able to catch." In essence the legislation of felonious criminal statute must be applicable to you in order for you to be one of the persons subject to it.

Now let us look at Title 18 USC §10 which states that: "The term "interstate commerce", as used in this title [Title 18], includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia." Now we have a problem, because this definition of interstate commerce, used for all of Title 18, conflicts with the definition of "State" @ Rule 1(b)(9), Fed. R. Crim. P.

Remember, 28 USC § 2072(b) plainly states that all laws in conflict with the Federal Rules of Criminal Procedure are of no force or effect. It is also

important to note that the various Rules of Procedure were authored by the
Supreme Court and approved by the Federal Congress. See 28 USC §
2072(a). Now clearly, under proper construction, the definition of "State"
at Fed. R. Crim. P., Rule 1(b)(9) is in conflict with and implied meaning of the
term "State" contained within the definition of interstate commerce at 18 USC § 10.
Wherefore, pursuant to 28 USC § 2072(b) the definition of interstate commerce
at 18 USC § 10 can not be read to include one of the several States of
the Union, because 18 USC § 10 would then conflict with Fed. R. Crim. P., Rule
1(b)(9), which supersedes it.

Under Fed. R. Crim. P., Rule 1(a)1 the Federal Rules of Criminal Procedure
control in all criminal proceeding before United States district courts, and 28 USC
§ 2072(b) states that those Rules of Procedure supersede all laws in conflict
with them. Therefore, if any statute within Title 18, including but not limited to
18 USC § 2252A(a)(2)(b) and 18 USC § 2252A(b)(i), rely upon the
definition of interstate commerce at 18 USC § 10, and the Charged Statutes do,
those Charged Statutes can not be read to include the several States of the
Union in the 18 USC § 10 definition of interstate commerce, because this conflicts
with the definition of "State" at Fed. R. Crim. P., Rule 1(b)(9), thus resulting in
18 USC § 2252A(a)(2)(b) and 18 USC § 2252A(b)(i) being of no force or
effect within any United States district court.

In summation, 18 USC § 2252A(a)(2)(b) and 18 USC § 2252A
(b)(i) are unconstitutional as-applied to the Defendant, because he should not,
and procedurally under due process, could not be charged with violating them
in any United States district court. Proper construction of the above argument
presumes this to be true. Defendant also physically resided within one of the several
States of the Union, outside the special maritime and territorial jurisdiction of the
United States [Federal Government], and thus under the scope of this argument and

supported by other portions of this motion, 18 USC § 2252A(a)(2)(b) and 18 USC § 2252A(b)(1) are unconstitutional as applied to the Defendant and/or should be dismissed with prejudice for lack of jurisdiction.

This argument creates a very detail oriented presumption regarding the scope of and the authority of 18 USC § 2252A(a)(2)(b) and 18 USC § 2252A(b)(1), in addition to other felony offenses contained within Title 18. Wherefore, does not the existance of this argument call into question the constitutionality of all the Charged Statutes and Rules on vagueness grounds alone?

"[C]riminal statutes must clearly define the conduct [they] proscribe. If it [the statute] does not give a person of ordinary intelligence fair notice of its scope, it denies due process." Bond v. United States, 189 L.Ed.2d 1, 22 (2014). See also Russell v. United States, 369 US 749 (1962). This argument calls into question the scope of the Charged Statutes and Rules, and it plainly appears, pursuant to this argument, that all are unconstitutional for vagueness as to that scope. Thus denying the Defendant due process.


Argument Five — Standing


"Federal courts are courts of limited jurisdiction. The character of the [cases and] controversies over which federal judicial authority may extend are delineated in Art. 3, § 2, Cl. 1. Jurisdiction of lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction. [T]his reflects the constitutional source of federal judicial power." Insurance Corp. v. Compagnie Des Bauxites, 456 US 694, 701 (1982).

"Subject-matter jurisdiction, then, is an Article 3 as well as a statutory requirement; [this] functions as a restriction on the federal [judicial] power, and contributes to the characterization of the federal sovereign." Insurance Corp.,

456 US 694, 702, 500-501 (1982).

"By the express terms of the Constitution, the exercise of the judicial power is limited to "cases" and "controversies."" Muskrat v. United States, 219 US 346, 356, 55 L.Ed. 246, 250 (1911).

The above constitutional and statutory requirements for subject-matter jurisdiction are clearly designed to protect Defendant's substantive and procedural due process rights under the 5th Amendment to the Constitution, and thus should purportedly ensure that criminal case number 4:20-CR-006673 was brought before a Federal court with both the constitutional and statutory power to hear and decide said case.

Title 18 USC § 3231 is a statutory grant, by the Federal Congress, of subject-matter jurisdiction to lower federal courts granting those courts jurisdiction over "all offenses against the laws of the United States [Federal Government]." Title 18 USC § 3231, thus allows, statutorially, lower Federal courts to hear cases based upon purported violations of Federal law, such as, 18 USC § 2252A(a)(2)(b) and 18 USC § 2252A(b)(i). However, Title 18 USC § 3231 represents only the statutory half of what is required to invoke the limited subject-matter jurisdiction of a lower Federal court. Without the constitutional half of subject-matter jurisdiction also being both established and ultimately proven 18 USC § 3231 is and was unconstitutional as-applied to Defendant. You can't have one without the other, subject-matter jurisdiction demands and requires both.

"Federal courts have [statutory] subject-matter jurisdiction over federal criminal prosecutions by virtue of 18 USC § 3231, [in] which [Congress] vest[ed] the district courts with the power to hear 'all offenses against the laws of the United States [Federal Government]." United States v. Yousef, 750 F. 3d 254, 259 (2nd Cir. 2014). "Federal courts general

[statutory] criminal subject-matter jurisdiction comes from 18 USC § 3231." _Musacchio v. United States_, 193 L.Ed.2d 639, 650 (2016). However, "Federal courts are [still] courts of limited [subject-matter] jurisdiction, possessing 'only that power authorized by Constitution and statute." _Gunn v. Minton_, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013). Wherefore, the Subject-Matter Jurisdiction, or the power over the nature of a case and the type of relief sought in that case, See Black's Law, 9th Ed. @ 931, is and has a constitutional and statutory foundational requirement. Title 18 USC § 3231 by itself can not and does not grant a federal court criminal subject-matter jurisdiction without the constitutional aspect also being present and proven.

What then is constitutionally required to invoke the criminal subject-matter jurisdiction of a Federal court? That would be a "case" or "controversy." "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual "cases" or "controversies". _Raines v Byrd_, 521 US 811, 818 (1997). The Defendant now emphasizes that "Article 3" [of the Constitution] embraces alike civil and "criminal" cases." _Tennessee v. Davis_, 100 US 257, 263-264 (1880).

"[O]ne of the controlling elements in the definition of a "case" or "controversy" under Article 3, is Standing." _ASARCO Inc. v. Kadish_, 490 US 605, 613 (1989). "[T]he requirement of an Art. 3 "case or controversy" is not merely a traditional "rule of practice", but rather is imposed directly by the Constitution." _Whitmore v. Arkansas_, 495 US 149, 161 (1990)." To state a case or controversy under Article 3, a plaintiff must establish standing. _Allen v. Wright_, 468 US 737, 751 (1984)." _Az. Christian Sch. Tuition Org. v. Winn_, 179 L.Ed.2d 523, 534 (2011). This is because, "the threshold issue of standing — [is] "an essential and unchanging part of the case-or-controversy requirement of Article 3." _Lujan v. Defenders of Wildlife_, 504 US 555,

560 (1992)." <u>Horne v. Flores</u>, 557 US 433, 445 (2009).

What is Standing, and what are its elements?

"Standing is perhaps the most important part of the jurisdictional doctrines." <u>Allen v. Wright</u>, 468 US 737, 750 (1984). "The party invoking federal jurisdiction [the Plaintiff in any case or controversy] bears the burden of establishing [Standing]." <u>Bennet v. Spear</u>, 520 US 154, 167-168 (1997). "To meet the Article 3 standing requirements, a party [Plaintiff] in <u>any</u> potential case or controversy must first show that the [Plaintiff] have "suffered an 'injury-in-fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged actions of the defendant and not... the result [of] the independant actions of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 US 555, 560-561 (1992) (internal quotations and citations omitted). See also <u>Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs. (TOC), Inc.</u>, 528 US 167, 180-181 (2000).

The United States of America [the Federal Government], is the named Plaintiff in criminal "<u>case</u>" number 4:20-CR-00673, and according to the current case record and court docket has <u>not</u> established its Standing before this court. The Plaintiff in charging the Defendant with violations of 18 USC§ 2252A(a)(2)(b) and 18 USC § 2252A(b)(1) has failed to show or prove how my conduct as purportedly violative of those Statutes cause the named Plaintiff an injury-in-fact. It can not be stressed enough that "Absent <u>injury</u>, the violation of a statute gives rise merely to a generalized grievance but not to Standing." <u>Waste Managment of North America, Inc. v. Weinberger</u>, 862 F.2d 1393, 1398 (9th Cir. Ct. App. 1988).

Defendant now stresses that the Indictment (Docket #9), the Criminal Complaint, and the Affidavit is Support of the Criminal Complaint sworn to by Cecil Arnold in criminal case number 4:20-CR-000673 have alleged no injury to any party. All of the above merely claim violation of statutes, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1), while alleging no injury to any party before this court, and none of the above claim or allege any injury to the United States of America, the named Plaintiff in this case.

The Criminal Complaint fails under Rule 3 of the Federal Rules of Criminal Procedure for lack of "essential facts constituting the offense charged," that essential fact being a party with standing to bring the complaint. Nowhere in the Criminal Complaint or its Supporting Affidavit does Cecil Arnold allege or claim injury to any party. "Absent injury, violation of a statute gives rise merely to a generalized grievance but not to standing." Waste Management of North America, Inc. v. Weinberger, 862 F. 2d 1393, 1398 (9th Cir. Ct. of App. 1988). Under the above case Cecil Arnold's Complaint and Affidavit fall under the "generalized grievance" and fail to establish any party's standing before this court, especially the named Plaintiff.

Article 3 of the Constitution requires that the Plaintiff, as the one invoking this court's subject-matter jurisdiction in criminal case number 4:20-CR-00673, show and prove that the Plaintiff in this case has suffered some actual or threatened injury-in-fact. The Plaintiff in this case has not alleged any such injury caused by Defendant's purported conduct as violative of 18 USC § 2252A (a)(2)(B) and 18 USC § 2252A(b)(1). Therefore the Plaintiff, constitutionally, has no Standing to invoke this courts subject-matter jurisdiction.

It is generally accepted in those cases in which the Supreme Court has addressed the relationship between Article 3 and standing to challenge conduct as violative of federal law, that at the very least, Article 3 of the Constitution

requires the party who invokes the court's authority; i.e., the Plaintiff or some other complaining party to show that they have individually/personally suffered some actual or threatened injury. See 70 L.Ed.2d 941, § 3(a) "Injury in fact".

The Supreme Court in Schlesinger v. Reservists Committee to Stop the War, 418 US 208, 220-221 (1974), recognized that concrete injury, whether actual or threatened, is the indespensable element of a case which serves in part to cast said case in a form traditionally capable of judicial resolution, and which adds the essential dimension of specificity to the case by requiring that the complaining party or Plaintiff have suffered a particular injury caused by the conduct challenged as unlawful. Observance of this in Simon v. Eastern Kentucky Welfare Rights Organization, 426 US 26, 37 (1976), the concept of standing focuses on the party seeking to get their complaint before a federal court and not on the issues they want to have adjudicated.

The Plaintiff in criminal case number 4:20-CR-00673 has alleged no injury in fact caused by the conduct of the Defendant as violative of federal law (18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i)). Wherefore the Plaintiff in this case is not an injured party before this court. Therefore, under the Standing Doctrine there is no party before this court with the right to invoke this court's constitutionally limited subject-matter jurisdiction. By failing to show or even allege an injury caused by the Defendant's purported conduct as violative of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i), the Plaintiff in this case has failed to establish standing before this court, and therefore has failed to properly invoke this court's subject-matter jurisdiction, constitutionally, to have the case herd. Wherefore, criminal case number 4:20-CR-00673 is not a constitutionally proper "case" under the case-or-controversy requirements of Article 3 of the Constitution, and case number 4:20-CR-00673 should be

dismissed with prejudice for lack of subject-matter jurisdiction.

And wherefore, 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are Unconstitutional as-applied to the Defendant for violation of his 5th Amendment Due Process rights. "The due process clause entitles the person to an impartial and disinterested tribunal in both civil and criminal cases." Marshall v. Jerrico, Inc., 446 US 238, 242 (1980). For a tribunal to be impartial and disinterested it must have subject-matter jurisdiction to hear the case or there is nothing before the court to be impartial or disinterested about, and in absence of subject-matter jurisdiction it is plainly obvious that one can not be charged with the violation of a statute. This court is without a Plaintiff with standing, and thus without subject-matter jurisdiction, and in the absence of jurisdiction 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) have been unconstitutionally applied to the Defendant.

The Constitutional "requirement of injury-in-fact," that the Plaintiff must have suffered and alleged," is a hard floor of Article 3 jurisdiction that can not be removed by statute." See Summers v. Earth Island Institute, 555 US 488, 497 (2009). Title 18 USC § 3231 can not save the Plaintiff's claim in criminal case number 4:20-CR-00673 because no statute can overcome the standing requirements of Article 3 of the Constitution. Title 18 USC § 3231 is only a congressional enactment granting federal courts statutory jurisdiction to hear "cases" for "offenses against the laws of the United States [Federal Government]," however 18 USC § 3231 does not and can not remove or overcome the constitutional jurisdiction requirement imposed by Article 3, requiring that the Plaintiff have standing.

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) do not expressly confer standing upon the Plaintiff in criminal case number 4:20-CR-00673, and in the absence of a statute expressly conferring standing the complaining party must allege and prove an injury-in-fact sustained unto them resulting from the Defendant's

purported conduct as violative of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1). Moreover, the Article 3 constitutional requirements in defining the Judicial Powers of the United States [Federal Government] remain even when a particular statute expressly confers Standing, and the Plaintiff must still allege and prove concrete injury and particularized injury caused by the Defendant's conduct as purportedly violative of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1). See Simon v. Eastern Kentucky Welfare Rights Org., 426 US 26, 41-42 (1976).

Congress does not have the power to lower or abrogate the constitutionally imposed requirements for Standing, even for the Plaintiff (the United States of America) in criminal case number 4:20-CR-00673, and 18 USC § 3231 can not and does not overcome those Standing requirements. A plaintiff in any case or controversy must always have suffered a distinct and palpable injury to themself. See Gladstone, Realtors v. Bellwood, 441 US 91, 100 (1979).

Just because 18 USC § 3231 grants statutory jurisdiction to lower federal courts over "offenses against the laws of the United States [Federal Government]," does not mean 18 USC § 3231 removes or meets the constitutional jurisdiction requirements imposed by Article 3 of the Constitution. Title 18 USC § ~~3231~~ 3231 is simply incapable of doing so.

The Indictment made by the Plaintiff in criminal case number 4:20-CR-00673 for conduct purportedly violative of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) should have failed and been rendered void because the Plaintiff showed no injury-in-fact sustained unto themselves caused by the Defendant's conduct. Therefore, the Indictment should have been dismissed for lack of Standing, and the case dismissed for lack of subject-matter jurisdiction.

The following comparative is given as an example. A Plaintiff before a federal court in a civil case would be required to invoke the court's statutory

jurisdiction under 28 USC § 1331 to challenge the constitutionality of a statute. However, that Plaintiff in said case would still have the additional burden imposed by Article 3 of the constitution's case-or-controversy requirement. That requirement being Standing; i.e., an injury caused by the statute being challenged. That court would would require as a prerequisite to subject-matter jurisdiction "both" statutory jurisdiction under 28 USC § 1331 and constitutional jurisdiction pursuant to the Standing requirements of Article 3 in order to hear this hypothetical case.

 Wherefore, Defendant asserts that the same burden of jurisdiction one would have to meet in the above hypothetical paragraph should be applied and required of the United States [Federal Government] when the United States [Federal Government] is the Plaintiff before a lower federal court in a "criminal" case. Federal courts are created by statute and their jurisdiction limited by statute. See Gunn v. Minton, 185 L.Ed.2d 72, 78 (2013). This applies even to criminal jurisdiction by the existance of 18 USC § 3231. Under 18 USC § 3231, federal courts have statutory jurisdiction over "offenses against the laws of the United States [Federal Government]." Wherefore, 18 USC § 3231 meets the jurisdiction by statute requirement just like 28 USC § 1331 when it comes to invoking the subject-matter jurisdiction of a federal court. However, there is still the constitutional jurisdiction requirement imposed by Article 3, and if one must meet this requirement when challenging the constitutionality of a statute under 28 USC § 1331, then the United States [Federal Government] must also meet the constitutional jurisdiction requirements imposed by Article 3 when charging criminal violations under 18 USC § 3231.

 Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) are unconstitutional as-applied to Defendant because the Plaintiff in criminal case number 4:20-CR-00673 never had standing to bring a claim for their

purported violation. Application of 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) without Standing violated Defendant's 5th Amendment due process rights making them unconstitutional as-applied. Without Standing for the Plaintiff 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) were applied to the Defendant in excess of the Judicial Power of the United States [Federal Government], and results in a deprivation of Defendant's liberty interests, and therefore violate the Defendant's substantive and procedural due process rights. Wherefore, this court should dismiss case number 4:20-CR-00673 with prejudice.

## Conclusion

"[It should never] be lost sight of, that the government of the United States is one of limited and enumerated powers, and that a departure from the true import and sense of its powers is pro tanto the establishment of a new constitution. It is doing for the people what they have not chosen to do for themselves. It is usurping the functions of a legislator, and deserting those of an expounder of the law. Arguments drawn from implicy or inconvenience [or without enumerated power] ought ... to be of no weight. The only sound principle is to declare [that the Constitution is], its lex scripta est ["so the law is written"], to follow, and to obey." Myers v. United States, 272 US 52, 182-183 (1926)

The constitutional and jurisdictional challenges made within this motion are neither frivolous nor meritless. Those challenges are based upon the text of the Constitution for the United States of America, the laws of Congress as codified within the United States Code, the Federal Rules of Criminal Procedure as prescribed by the Supreme Court and approved by Congress, the Supreme Court's current and past precedents, and the opinions of lower circuit and district courts, all of which this court is bound by or compelled by Judicial Notice

to acknowledge. To call this motion and the constitutional and jurisdictional challenges made within frivolous or meritless is to call everything used to support those challenges frivolous or meritless.

Your Honor, I know your job is to follow the law, and that sometimes that job is made very difficult. In the past most judges have not seen the law and the constitution as they should have seen them. I firmly believe that the legal reasoning I have constructed herein is sound and correct, and although there is precedent not in my favor there is some precedent that is, and justice and the true meaning of the Constitution are on my side. The Constitution isn't worth the parchment it was printed upon if no one is willing to interpret and enforce it properly. At the end of the day, rendering justice and upholding the letter and spirit of the Constitution is what successful judging is all about. I implore you to read my arguments with an open mind and allow me to show you why justice and the letter and spirit of the Constitution are on my side.

Wherefore, the Defendant respectfully requests that this honorable court declare and adjudge the following:

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) are facially unconstitutional because the Federal Congress does not have the enumerated or implied power to "prohibit" child pornography or any other article of commerce under its enumerated Commerce Clause Power or its Necessary and Proper Clause. The enumerated power to "regulate" contained within the Commerce Clause does not grant a power to "prohibit", nor is a power to "prohibit" gained by necessary implication through the Necessary and Proper Clause.

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(i) are facially

unconstitutional because the Federal Congress does not have the enumerated or implied power to "punish" by felony statute under its enumerated Commerce Clause Power or its Necessary and Proper Clause. The enumerated power to "regulate" contained within the Commerce Clause does not grant a power to "punish", nor is a power to "punish" gained by necessary implication through the Necessary and Proper Clause.

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are unconstitutional as-applied to the Defendant because neither could be applied to the Defendant because of where he physically resided at the time they were purportedly violated.

Title 18 USC § 3231 is unconstitutional and of no force or effect if used by or within any United States district court because it conflicts with the Federal Rules of Criminal Procedure, which supersede all laws in conflict with them pursuant to 28 USC § 2072 (b).

Proper construction of the Federal Rules of Criminal Procedure and 28 USC § 2072(b) render 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) unconstitutional as-applied to the Defendant because they could not be applied to the Defendant because of where he physically resided at the time they were purportedly violated.

Proper construction of the Federal Rules of Criminal Procedure and 28 USC § 2072(b) render 18 USC § 3231 unconstitutional as-applied to the Defendant because no "offense against the laws of the United States [Federal Government]" was committed that any United States district court could take jurisdiction of.

Proper construction of the Federal Rules of Criminal Procedure and 28 USC § 2072(b) render 18 USC § 2252A(a)(2)(B) and 18 USC § 2252 A(b)(1) and 18 USC § 3231 unconstitutionally vague because of plainly evident conflicts between the laws contained within Title 18, the Federal Rules of Criminal Procedure, and 28 USC § 2072(b).

Title 18 USC § 2252A(a)(2)(B) and 18 USC § 2252A(b)(1) are unconstitutional as-applied to the Defendant because the United States [Federal Government] in criminal case number 4:20-CR-00673 never had, alleged, nor proved they had Standing before this court as a Plaintiff.

Case number 4:20-CR-00673 should be dismissed with prejudice for lack of territorial jurisdiction.

Case number 4:20-CR-00673 should be dismissed with prejudice for lack of subject matter jurisdiction.

Defendant respectfully requests a Statement of Reasons as to any conclusions of law and facts with regard to this motion in addition to Findings of Fact and Law with regard to and ruling entered.

Respectfully Submitted,

Jason Mulder

Jason D. Mulder     #00133-379
Federal Detention Center
P.O. Box 526255
Houston, TX 77052

# Certificate of Service

This is to certify that this hand written original copy of this Motion Challenging Constitutionality, Jurisdiction of the Court, and for Dismissal was sent to the Clerk of the Court, Bob Casey United States Courthouse mailing address at P.O. Box 61010, Houston, TX 77002 on this the 7th day of April, 2021.

Please electronicly file a copy of this motion to the Prosecutor in case number 4:20-CR-00673, Sherie Lynn Zack.

Respectfully,

Jason Mulder
Jason D. Mulder

Jason Dal Mulder #00133-379
Federal Detention Center
P.O. Box 526255
Houston, TX 77052

United States Courts
Southern District of Texas
FILED

APR 12 2021

Nathan Ochsner, Clerk of Court

THIS CORRESPONDENCE IS FROM AN INMATE
IN CUSTODY OF THE BUREAU OF PRISONS

Legal Mail

Clerk of the Court
Bob Casey United States Courthouse
P.O. Box 61010
Houston TX 77002

Legal Mail

